## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| CARLOS R. WEISSENBERG, | ) | Case No. 20-17132-LMI |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DENMARK PROPERTIES LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No. 20-01257-LMI |
| | ) | |
| CARLOS R. WEISSENBERG, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND DEFENDANT'S ANSWER & AFFIRMATIVE DEFENSES

Plaintiff Denmark Properties Limited ("Denmark"), by its undersigned counsel, submits this response in opposition to Defendant Carlos R. Weissenberg's ("Weissenberg") Motion for Leave to Amend Defendant's Answer & Affirmative Defenses to Plaintiff's Second Amended Complaint [ECF No. 40], and states as follows:

### ARGUMENT

### I.    Legal Standard

A defendant seeking to amend its answer to add affirmative defenses must first obtain leave of court. Fed. R. Civ. P. 15(a)(2). The Court should generally "freely give leave when justice so requires." *Id.* The Court need not, however, allow amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or

1

(3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## II.   Defendant's proposed Affirmative Defenses are futile.

Defendant states that "upon counsel's review of the file [it] determined that it can allege additional Affirmative Defenses." [ECF No. 40, p.2]. However, all the proposed Affirmative Defenses are insufficient as a matter of law and subject to being stricken. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense."). Therefore, granting leave to add these Affirmative Defenses would be futile. Accordingly, the Court should deny leave to amend.

### a.   First, Second, Third, Fourth, and Fifth Affirmative Defenses – Failure to State a Cause of Action

In his proposed First, Second, Third, Fourth, and Fifth Affirmative Defenses, Defendant alleges that Plaintiff has failed to state a cause of action. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013). "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1349 (11th Cir. 1988). "Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case." *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007). Therefore, it is not a proper affirmative defense. Even if it were, the proposed Affirmative Defenses are subject to being stricken because they "fail to recite more than bare-bones conclusory allegations." *Rubinstein v. Keshet Inter Vivos Tr.*, 2019 U.S. Dist. LEXIS 99428, at *12 (S.D. Fla. June 13, 2019).

### i.   *First Affirmative Defense*

In his First Affirmative Defense, Defendant alleges that "Plaintiff fails to meet the pleading requirements of Rule 9(b)." [ECF No. 40, p.9]. Defendant claims that "Plaintiff fails to plead any

[*sic*] what the Defendant obtained as a consequence of the alleged fraud." *Id.*, at p.10. However, in his Second Amended Complaint ("SAC"), Plaintiff has alleged that "Weissenberg stood to make substantial commissions by selling the Leveraged and Inverse ETFs." SAC, ¶ 47. Defendant denies this, saying he "never made a commission because the account lost over $175,000." [ECF No. 40, p.10]. This is patently false, however, as Defendant earned a commission whenever a transaction was made, and the securities were not initially sold for a loss. *See* SAC, ¶ 34 ("On January 2016, these shares were sold for a gain of approximately $14,417.51.").

ii.    *Second Affirmative Defense*

In his Second Affirmative Defense, Defendant alleges that "Plaintiff fails to state a cause of action for 10(b)(5)." [ECF No. 40, p.10]. Defendant claims that "10(b)(5) is inapplicable to the case at hand because the parties and actions reside wholly outside the United States of America." *Id.* First, it should be noted that nothing in Section 10(b) of the Securities Exchange Act requires that the parties reside in the United States to bring a claim under the statute, and the undersigned has found no case law imposing such a requirement. In any case, the parties did have a connection to the United States. Defendant falsely alleges that "Plaintiff is not registered with the State of Florida to transact business." However, Plaintiff is a registered limited liability company with the State of Florida. *See* Sunbiz records, at **Exhibit A**. Defendant also states that "at all relevant times, Defendant was a resident of the country of Ecuador and did not reside in the United States of America." [ECF No. 40, p.10]. However, GTA Advisors LLC—which Defendant used to manage Plaintiff's funds—operated through a clearing house out of Miami, Florida. *See* Brokerage Statement, at **Exhibit B**.

Defendant also attempts to obfuscate the issues by selectively quoting inapplicable law. Defendant alleges "Plaintiff's claim fails to take into account Rule 10b5-1." [ECF No. 40, p.11].

This rule cited by Defendant "defines when a purchase or sale constitutes trading 'on the basis of' material nonpublic information" in insider trading cases. 17 C.F.R. § 240.10b5-1. However, it does not mean—as Defendant improperly implies—that cases under Section 10(b)(5) and Rule 10b-5 *must* involve insider trading. Defendant also claims that "Plaintiff fails to allege any scheme where the Defendant misstated or omitted information regarding to [*sic*] the price of stocks, a time trading scheme, [or] the failure to correct a corporate stock report." [ECF No. 40, pp.11-12]. However, those are not elements of a violation of Section 10(b)(5) and Rule 10b-5, and therefore, Plaintiff is not required to plead them.

### iii.    *Third Affirmative Defense*

In his Third Affirmative Defense, Defendant alleges that "Plaintiff fails to state a cause of action pursuant to Florida Securities and Investor Protection Act." [ECF No. 40, p.12]. Defendant again alleges that "Plaintiff is not a registered Florida business entity and at all relevant times Defendant was a resident of Ecuador." *Id.* Defendant complains that "Florida law should not apply simply because Defendant has now filed for bankruptcy in Florida." *Id.* These arguments are meritless for the reasons stated above. *See* **Exs. A**, **B**.

Defendant claims that "Plaintiff fails to state a cause of action because the alleged fraudulent activities are not within the purview of FISPA [*sic*]." [ECF No. 40, p.12]. Defendant again wrongly implies that the scope of the statute is much narrower than it is, alleging "[f]raudulent claims for FISPA [*sic*] involve undercapitalization of projections, misstatements as omissions on financial statements, and the artificial increasing of commissions." *Id.* (internal citations omitted). Notably, none of the cases cited by Defendant stands for the proposition that other claims, such as the one brought by Plaintiff, are not allowed under the statute. Defendant alludes to "*Black*" for the idea that an "investment in 'risky stocks' is not enough to violate FISPA [*sic*]." *Id.* However,

Defendant has failed to provide a citation to said case, so it is not possible to corroborate this statement.

iv.    _Fourth Affirmative Defense_

In his Fourth Affirmative Defense, Defendant alleges that "Plaintiff fails to state a cause of action pursuant to Florida Deceptive and Unfair Trade Practices Act." [ECF No. 40, p.13]. Once more, Defendant alleges that "Plaintiff is not a registered Florida business entity and at all relevant times Defendant was a resident of Ecuador." *Id.* Defendant again protests that "Florida law should not apply simply because Defendant has now filed for bankruptcy in Florida." *Id.* These arguments are meritless for the reasons stated above. *See* **Exs. A**, **B**.

Defendant next argues that FDUTPA does not apply to claims arising from securities transactions. Defendant cites an opinion where this Court "believe[d] that the Florida Supreme Court, if confronted with the question whether [FDUTPA] applies to claims arising from securities transactions, would hold that it does not." *Crowell v. Morgan Stanley Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1295 (S.D. Fla. 2000). However, the fact of the matter remains that the Florida Supreme Court, as the ultimate arbiter on Florida law, has never ruled on this issue and could read FDUTPA more expansively than this Court did twenty-one years ago. Defendant also cites other out-of-state decisions. However,

> [t]he majority of these cases are securities fraud cases in which the security transaction itself was the basis of the plaintiff's complaint. In this case, [Defendant's] misrepresentative financial advice form[s] the basis of Plaintiff's complaint. Defendants cite no authority that financial advisors are exempt from consumer protection statutes.

*Maese v. Garrett*, 329 P.3d 713, 721 (N.M. Ct. App. 2014) (internal citations omitted). Courts in other states have indeed found that consumer protection statutes apply to securities transactions. *See*, *e.g.*, *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639, 641 (App. Div. 4th Dept. 2001)

5

("we see no basis for invoking any blanket exception under the statute for securities transactions"); *McCullough v. Shearson Lehman Bros., Inc.*, 1988 U.S. Dist. LEXIS 1563, at *11 (W.D. Pa. Feb. 18, 1988) ("Although the investment field is not mentioned in this Law, we must interpret this act liberally to cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce."). This Court should likewise find—as Defendant unwittingly admits—that FDUTPA "does apply to claims arising from securities transactions." [ECF No. 40, p.13].

> v.    *Fifth Affirmative Defense*

In his Fifth Affirmative Defense, Defendant claims "Plaintiff's Count IV is barred because the [*sic*] any alleged debt is dischargeable." [ECF No. 40, p.14]. Defendant alleges that "[b]ecause Plaintiff fails to state a cause of action for each of its claims in the Second Amended Complaint and a violation of Federal or State Securities law does not exist, the debt is dischargeable." *Id.* As seen above, however, Plaintiff does have viable claims against Defendant for violations of federal and Florida law, which make the debt non-dischargeable. *See* 11 U.S.C. §523(a)(19)(A)(i).

Defendant provides no facts to support this affirmative defense, simply "incorporat[ing] its First, Second, Third, and Fourth Affirmative Defenses herein." [ECF No. 40, p.14]. Moreover, the Fifth Affirmative Defense is based on the same theory as Defendant's Eighth Affirmative Defense. Therefore, it is not only facially insufficient but redundant as well, and subject to strike. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

**b.  Sixth Affirmative Defense – Assumption of Risk**

In his Sixth Affirmative Defense, Defendant alleges that "Mr. Ubieto was advised by Defendants of potential risks and he made the final decision to continue with the Exchange traded funds." [ECF No. 40, p.14]. "Assumption of risk bars recovery when a plaintiff freely chooses a

6

course of action with full knowledge of its danger." *Erchul v. Starbucks Corp.*, 750 F. App'x 836, 840 (11th Cir. 2018). To assert this defense, Defendant must establish that Plaintiff "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Id.* Defendant has not sufficiently established these elements. Moreover, Defendant's statements are at odds with the fact that "Mr. Ubieto had a conservative risk profile as an investor and was relying on Weissenberg to place him in invest- ments that were suitable for his goals and risk tolerance." SAC, ¶ 9. Defendant's bare-bones alle- gations are nothing more than a denial of Plaintiff's Second Amended Complaint, which is not the function of an affirmative defense.

### c.  Seventh Affirmative Defense – Failure to Join an Indispensable Party

In his Seventh Affirmative Defense, Defendant alleges the Second Amended Complaint is "barred because the Plaintiff fails to join an indispensable party, Mr. Agustin Ubieto." [ECF No. 40, p.14]. A party is "indispensable" when "in that person's absence, the court cannot accord com- plete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Defendant states that "Plaintiff's entire claims are centered on either communications or lack of communication between the De- fendant and Ubieto, yet Ubieto is not joined a member to this action." [ECF No. 40, p.15]. While many—although certainly not all—of the communications in this case were between Mr. Ubieto and Defendant, the funds mismanaged by Defendant belonged to Plaintiff. *See* SAC, ¶ 6.

Defendant's real complaint seems to be that "Plaintiff will be unable to present its case absent hearsay and third-party testimony." [ECF No. 40, p.15]. As Defendant acknowledges, Mr. Ubieto has sadly passed away. While Mr. Ubieto's testimony would be invaluable, that does not make him (or his estate) an indispensable party. Defendant does not explain why the Court cannot afford complete relief among the existing parties, making this defense insufficient. *See Pujals ex*

7

*rel. El Rey de los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1331-32 (S.D. Fla. 2011) (finding allegation that wrong plaintiff is bringing suit to be a denial, not an affirmative defense).

### d.  Eighth Affirmative Defense – Debt Is Dischargeable

In his Eighth Affirmative Defense, Defendant alleges "Plaintiff's Count IV is barred because the [*sic*] any alleged debt is dischargeable." [ECF No. 40, p.15]. Defendant's conclusory statements are nothing more than a repetition of his Fifth Affirmative Defense. Therefore, this affirmative defense is not only facially insufficient but redundant as well, and subject to strike. *See* Fed. R. Civ. P. 12(f).

### e.  Ninth Affirmative Defense – *Forum Non Conveniens*

In his Ninth Affirmative Defense, Defendant argues that "the action should be dismissed pursuant to the doctrine of *forum non conveniens*." [ECF No. 40, p.15]. For the doctrine to apply, Defendant must show that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate [its] suit in the alternative forum without undue inconvenience or prejudice." *Link & Assocs. v. Ivany (In re Schonfeld, Inc.)*, 806 F. App'x 743, 745 (11th Cir. 2020). Defendant only addresses the first element, alleging "Florida state circuit courts would be a better forum for the instant action."[1] *Id.* Defendant fails to note, however, that the parties were already part of a lawsuit in state court that was automatically stayed after Defendant filed for bankruptcy.

It should be noted that "there is a strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy is pending." *Bavaria Yachts USA, LLLP v. Bavaria Yachtbau GmbH (In re Bavaria Yachts USA, LLLP)*, 575 B.R. 540, 558 (Bankr. N.D. Ga. 2017).

---

[1] Defendant then goes on to say: "The contract requires the forum…" [ECF No. 40, p.15]. It seems part of the Ninth Affirmative Defense is missing, making it impossible to address whatever forum selection issues Defendant seems to allude to in this incomplete sentence.

Defendant chose this forum to bring his bankruptcy petition. Plaintiff then brought this adversary proceeding to determine the dischargeability of a debt, as permitted by Fed. R. Bankr. P. 7001(6). Defendant offers no explanation as to what makes this forum inconvenient now, eight months after Plaintiff began this adversary proceeding. In fact, it seems Defendant's arguments are driven by nothing more than bad faith. Plaintiff would be extremely prejudiced if Defendant is permitted to maintain this defense, especially after admitting at his Rule 2004 examination that his reason for filing bankruptcy was to stay Plaintiff's lawsuit in state court and discharge the debt owed to Plaintiff. *See* Adversary Complaint, ¶ 54, at **Exhibit C**.

### f.   Tenth Affirmative Defense – Standing

In his Tenth Affirmative Defense, Defendant alleges that Plaintiff has no standing because "Juan Carlos Ubieto does not have authority to bring the instant action." [ECF No. 40, p.15]. First, it should be noted that "lack of standing is not an affirmative defense." *Denova v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 66956, at *6 (M.D. Fla. Jan. 25, 2018). In any case, Juan Carlos Ubieto in one of Plaintiff's managers and can cause Plaintiff to bring suit. *See* **Ex. A**. In Florida, "a matter relating to the activities and affairs of the company is decided exclusively by the manager." Fla. Stat. § 605.0407(3).

Defendant then goes on to give confusing and contradictory statements. For example, Defendant states "Mr. Ubieto was simply a director of the company." [ECF No. 40, p.16]. In the very next sentence, however, Defendant claims "Plaintiff has failed to prove how ownership transferred in the midst of Mr. Ubieto's passing," i.e., from Mr. Ubieto to Juan Carlos Ubieto. *Id.*

Defendant further attacks standing claiming that "although Denmark entered into the alleged contract, the funds that were to be managed by GTA Advisors were meant to provide Mr. Ubieto with support for his retirement." *Id.* Defendant argues that, if this is true, "Denmark did not

9

have an interest in an arrangement between GTA Advisors and Mr. Ubieto and any contract should have been between Mr. Ubieto and GTA." *Id.* Regardless of Defendant's speculation as to what should have happened, the reality is that Defendant—through GTA Advisors—was managing Plaintiff's money. *See* **Ex. B**. Although this was done for the benefit of Mr. Ubieto, Plaintiff still had an interest in the arrangement. In Florida, a limited liability company has the power to "[p]ay pensions and establish pension plans, pension trusts, profit-sharing plans, bonus plans, option plans, and benefit or incentive plans for any or all of its current or former managers, members, officers, agents, and employees." Fla. Stat. § 605.0109(10).

Clearly, Defendant's arguments as to standing have no merit. Plaintiff suffered an injury in that Defendant fraudulently mismanaged its funds. Defendant finally argues that "there is an issue with privity and the proper parties who are required for this action." [ECF No. 40, p.16]. This is just a rehash of the arguments raised in the Seventh Affirmative Defense for failure to join an indispensable party and can thus be stricken for being redundant as well. *See* Fed. R. Civ. P. 12(f).

### g.  Eleventh Affirmative Defense – Statute of Limitations

Defendant's Eleventh Affirmative Defense is based on the supposed "expiration of the statute of limitation." [ECF No. 40, p.16]. Defendant then lists three statutes of limitation, ranging from two to four years. *Id.* Defendant does not elucidate, however, which claims are time barred or when they became so. "An affirmative defense simply stating that a plaintiff's claims are barred by the statute of limitations is insufficiently pled." *Aidone v. Nationwide Auto Guard, L.L.C.*, 295 F.R.D. 658, 662 (S.D. Fla. 2013).

In fact, none of Plaintiff's claims are time barred. Plaintiff only discovered Defendant's mismanagement after he liquidated all of Plaintiff's shares in February 2019. *See* SAC, ¶ 37. This adversary proceeding began on July 9, 2020, well within the two-year statutes of limitations for

securities violations and the four-year statute of limitations for FDUTPA violations.

### h. Twelfth and Thirteenth Affirmative Defenses – Unclean Hands

In his proposed Twelfth and Thirteenth Affirmative Defenses, Defendant alleges that Plaintiff comes to the Court with unclean hands. However, for Defendant to avail himself of the unclean hands doctrine, he must satisfy two requirements. *See Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993). First, he must "demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted." *Id.* Second, "even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." *Id.*

In his Twelfth Affirmative Defense, Defendant alleges that "Plaintiff continuously misrepresents its business structure and incorporation, masking its identity and now comes before this Court for relief." [ECF No. 40, p.17]. Defendant once again states that Plaintiff "is not registered to do business in the State of Florida or listed on Sunbiz." As mentioned before, this is patently false. *See* **Ex. A**. Moreover, Defendant has shown no link between Plaintiff's alleged wrongdoing and the claims that are supposedly barred by this defense.

In his Thirteenth Affirmative Defense, Defendant alleges without basis that "Juan Carlos Ubieto is indebted to Denmark Properties for amounts in excess of $500,000.00." [ECF No. 40, p.17]. According to Defendant's unsubstantiated allegations, "Juan Carlos Ubieto now attempts to bring forth this suit in order to satisfy his debt to Denmark, however Juan Carlos Ubieto does not have the authority to bring this action." *Id.* As mentioned above, Juan Carlos Ubieto is one of Plaintiff's managers, and has the authority to cause Plaintiff to bring suit. *See* **Ex. A**. In any case, this affirmative defense plainly fails as Defendant has not alleged any wrongdoing on Plaintiff's part, let alone one that would bar recovery on any of Plaintiff's claims.

### i.   Fourteenth Affirmative Defense – Waiver

In his Fourteenth Affirmative Defense, Defendant amazingly alleges that "Augustine [*sic*] Ubieto waived any claims against Defendant as they had a fiduciary duty to respect the wishes of their client." [ECF No. 40, p.18]. Defendant seems to repeat the arguments made in his Sixth Affirmative Defense, that Mr. Ubieto assumed the risk of investing in leveraged and inverse ETFs. It is true that Defendant owed a fiduciary duty to his clients. However, Mr. Ubieto's wishes were for "Weissenberg to place him in investments that were suitable for his goals and risk tolerance." SAC, ¶ 9. Defendant failed to do that.

The elements of waiver are: "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Dantzler, Inc. v. PNC Bank*, 946 F. Supp. 2d 1344, 1367 (S.D. Fla. 2013). Defendant has made no allegations establishing these elements, and this affirmative defense should therefore be stricken as insufficiently pleaded.

### j.   Fifteenth and Eighteenth Affirmative Defenses – Misstating Facts

Defendant's Fifteenth and Eighteenth "Affirmative Defenses" are the clearest example of what is *not* an affirmative defense. As mentioned *supra*, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv.*, 846 F.2d at 1349. However, that is exactly what Defendant does here.

Defendant's Fifteenth "Affirmative Defense" alleges "[t]he specific quote used by Plaintiff from the Financial Industry Regulatory Authority does not cite any law or regulation against leveraged ETFs, rather they are a warning for them." [ECF No. 40, p.18]. However, throughout its Second Amended Complaint, Plaintiff refers to these statements as warnings. *See* SAC, ¶¶ 21-30. Therefore, it is not clear where Plaintiff "misstated" any facts.

Case 20-01257-LMI    Doc 43    Filed 03/09/21    Page 13 of 15

Defendant's Eighteenth "Affirmative Defense" alleges Plaintiff is incorporated "under the laws of the country of Nevis,[2] not Panama." [ECF No. 40, p.19]. Even if true (which it is not), this alleged defect in the Second Amended Complaint is not a proper affirmative defense. Defendant also accuses Plaintiff once again of not being "registered to conduct business in Miami-Dade County." As mentioned, many times above, this is not true. *See* **Ex. A**.

### k.  Sixteenth Affirmative Defense – Unjust Enrichment

In his Sixteenth Affirmative Defense, Defendant again for no reason slanders Juan Carlos Ubieto, claiming he is "bringing these false claims as a method to recover monies unjustly to make up for his own failed ventures." [ECF No. 40, pp.18-19]. Defendant's allegations are not only scandalous but demonstrate an utter lack of understanding of what unjust enrichment is. Unjust enrichment is not an affirmative defense but an independent cause of action. A claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Here, Defendant has not alleged he has conferred any benefit on Plaintiff, making his claim for unjust enrichment fail.

### l.  Seventeenth Affirmative Defense – Laches

In his Seventeenth Affirmative Defense, Defendant alleges "Plaintiff's claims are barred pursuant to the doctrine of laches." [ECF No. 40, p.19]. The elements of laches are: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Agency, Inc. v. CVG Int'l*

---

[2] It should be noted that Nevis is not a country. Nevis is an island which forms part of the country of Saint Kitts and Nevis.

*Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000). Defendant claims "Mr. Ubieto died on October 10, 2018, however Denmark Properties Limited did not bring an action until this adversary action instituted on July 9, 2020, nearly two years later and only after Defendant filed for bankruptcy." [ECF No. 40, p.19]. That is false. First, Plaintiff did not discover Defendant's wrongdoings until Defendant sold Plaintiff's investments around February 2019. Plaintiff first sued Defendant in state court in September 2019 and was forced to institute this adversary proceeding due to Defendant's bad faith petition for bankruptcy. Defendant cannot seriously argue that Plaintiff delayed filing suit for an unreasonable and inexcusable length of time.

WHEREFORE, Plaintiff Denmark Properties Limited requests the Court to enter an Order denying Defendant Carlos R. Weissenberg's Motion for Leave to Amend Defendant's Answer & Affirmative Defenses to Plaintiff's Second Amended Complaint in its entirety and grant all other relief this Honorable Court deems just, proper, and equitable.

Dated: March 9, 2021

Respectfully submitted,

Eduardo A. Maura, Esq.
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
Phone: 305-570-2208
Email: eayala@ayalalawpa.com

By: */s/ Eduardo A. Maura*
        Eduardo A. Maura
        Florida Bar No. 91303

14

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served via the Court's CM/ECF system on March

9, 2021, upon counsel for Defendant.

By: */s/ Eduardo A. Maura*
       Eduardo A. Maura
       Florida Bar No. 91303
